UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MILLENNIUM PIPELINE COMPANY, L.L.C.,


                              Plaintiff,

                                                      DECISION AND ORDER

                                                      07-CV-6560L


              v.

CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (NO NUMBER) THAYER ROAD,
S.B .L. NO. 63.00-1-24.1, TOWN OF ERIN, COUNTY
OF CHEMUNG, NEW YORK,
NATHANIEL HENDRICKS,



                              Defendant.
_____

      This action was commenced by Millennium Pipeline Company, L.L.C. ("Millennium"),

seeking an order pursuant to the Natural Gas Act, 15 U.S.C. § 717, *et seq.*, granting Millennium

temporary and permanent easements in certain real property ("Property") located in Chemung

County, New York.  The primary purpose of the easements would be to allow Millennium to

construct a natural gas pipeline on or adjacent to the Property, which is owned by defendant

Nathaniel Hendricks.

      On February 15, 2008, the Court granted Millennium a preliminary injunction granting

Millennium a temporary easement over the Property for the purpose of constructing and maintaining

a gas pipeline.  According to the terms of the injunction, the pipeline itself was to be built "on land

adjacent to the Property," and the purpose of the easement was to allow Millennium to enter the

Property "for the purposes of accessing, constructing, testing and operating a natural gas pipeline on

land adjacent to the Property ... ."  Dkt. #14 at 2.  Millennium was required to post a $100,000 bond,

with defendant's compensation left for future determination at trial.  *Id.*

Hendricks took an appeal from that order to the Court of Appeals for the Second Circuit, which on December 12, 2008, dismissed the appeal on the ground that "there ha[d] not yet been a formal determination of the underlying action," which rendered the Court of Appeals "without jurisdiction to consider many of the arguments [Hendricks] raise[d] regarding factual and legal issues that ha[d] not yet been addressed by the district court." The court added that "these issues should be raised before the district court in the first instance, and, in the event an appeal is taken from a final judgment on the merits, the issues may again be raised before this Court." Dkt. #25.

Millennium now moves for summary judgment. According to Millennium, the pipeline has been completed, and the only thing that remains is for this Court to enter judgment in Millennium's favor, granting it a permanent easement over Hendricks's property, and to limit Hendricks's damages to the just compensation set forth in Rule 71.1 of the Federal Rules of Civil Procedure.[1]

In addition, Hendricks has moved for leave to amend his answer to include Columbia Gas Transmission ("Columbia") as a party to this action, and to add a counterclaim against Millennium and Columbia. Millennium opposes that request.

---

[1]Millennium also originally moved for the appointment of a commission to determine just compensation in accordance with Rule 71.1, which provides that if one of the parties has demanded a jury trial, the court in its discretion may order that the issue of just compensation be determined by a commission of three persons appointed by the court, rather than by a jury.

Though Hendricks had requested a jury trial, he has since withdrawn that request. Dkt. #49-2 at 1-2. Based on Hendricks's withdrawal of that request, Millennium has also withdrawn its motion for appointment of a commission, and both sides have now consented to have the issue of just compensation tried to the Court. *See* Transcript, Feb. 22, 2011 (Dkt. #61) at 3.

## I. Motions for Summary Judgment:  General Principles[2]

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted to the movant "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law."  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008), *cert. denied*, 130 S.Ct. 95 (2009) (citation and internal quotation marks omitted).

In determining whether the moving party is entitled to summary judgment, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in [his] favor."  *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005).  *See also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  The nonmoving party cannot defeat a well-founded motion for summary judgment merely on the strength of a conclusory assertion that fact issues exist, however.  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. ...  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

---

[2]Since Rule 71.1, which governs proceedings to condemn real and personal property by eminent domain, "does not provide a standard for reviewing and deciding objections to a condemnation complaint," *Williston Basin Interstate Pipeline Co. v. Property Interests Necessary to Conduct Gas Storage Operations*, No. CV-09-167, 2010 WL 5104991, at *1 (D.Mont. Dec. 9, 2010), the party seeking condemnation may properly move for summary judgment pursuant to Rule 56.  *Id.*; *Kansas Pipeline Co. v. A 200 Foot by 250 Foot Piece of Land*, 210 F.Supp.2d 1253 (D.Kan. 2002).

## II. Procedure under the Natural Gas Act

The Natural Gas Act ("NGA" or "Act") provides the Federal Energy Regulatory Commission ("FERC") with jurisdiction over the transportation and sale of natural gas in interstate commerce. *See* 15 U.S.C. § 717(b).   Section 7(c) of the Act requires companies to obtain from FERC a "certificate of public convenience and necessity" before constructing or operating interstate natural gas facilities.   15 U.S.C. § 717f(c).   FERC may "attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."   15 U.S.C. § 717f(e).

Section 7(h) of the Act vests the holder of a FERC certificate of public convenience with the power to condemn necessary property.   Specifically, it provides:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located ... .

To obtain an order of condemnation from the district court under the NGA, the movant "must, at minimum, [show]:  '(1) that it holds a FERC certificate authorizing the relevant project, (2) that the land to be taken is necessary to the project; and (3) that the company and the landowners have failed to agree on a price for the taking ... .'"   *Transwestern Pipeline Co. v. 17.19 Acres of Property Located in Maricopa County*, 550 F.3d 770, 776 (9ᵗʰ Cir. 2008) (quoting *National Fuel Gas Supply Corp. v. 138 Acres of Land*, 84 F.Supp.2d 405, 416 (W.D.N.Y. 2000)).   Thus, "[o]nce a [certificate] is issued by the FERC, and the gas company is unable to acquire the needed land by contract or agreement with the owner, the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking."   *Maritimes & Northeast Pipeline, L.L.C. v. Decoulos*, 146 Fed.Appx. 495, 498 (1ˢᵗ Cir. 2005).

- 4 -

### III. Application to this Case

In the case at bar, Millennium obtained a FERC certificate in 2002, and FERC amended the certificate in 2006. The substance of the amendments apparently related to some revisions to the pipeline project and some other matters that are not of particular importance to the motions before me.[3] Millennium then went forward with construction of the pipeline.

It is clear, then, that Millennium holds a FERC certificate for the project, and that Millennium and Hendricks have failed to agree on a price. In addition, FERC determined that the pipeline project served the public convenience and necessity, and there is no indication that Hendricks sought judicial review of the FERC certificate, which, by statute, would only have been available in the Court of Appeals for the Second Circuit. *See* 15 U.S.C. § 717r; *Guardian Pipeline, LLC v. 529.42 Acres of Land*, 210 F.Supp.2d 971, 974 (N.D.Ill. 2002) (stating that "[t]he validity and conditions of the FERC Certificate cannot be collaterally attacked in district court," and that review of a FERC certificate "is the exclusive province of the appropriate court of appeals").

Hendricks does not, in fact, seek to challenge the FERC certificate itself; he alleges that, by constructing the pipeline on his property, Millennium has failed to comply with the terms of that certificate, and with this Court's preliminary injunction. In support of his position, Hendricks notes that the Court's prior injunction order provided that the pipeline was to be built on "land adjacent to the Property." Hendricks also cites page 111 of the FERC certificate, which states, *inter alia*, that "[t]he authorized facility locations shall be as shown in the final supplemental EIS [environmental impact statements], as supplemented by final alignment sheets," that "before the start of any construction, Millennium ... shall ... file with the Secretary any revised detailed survey alignment maps/sheets," and that "[a]ll requests for modifications of environmental conditions of the order or site specific clearances must be written and must reference locations designated on these alignment maps/sheets." Dkt. #8-3 at 49. According to Hendricks, the alignment sheets submitted to FERC

---

[3]FERC's 2006 certificate stated that Millennium sought to reconfigure the pipeline project in some respects concerning its general route. *See* Dkt. #8-2 at 3.

by Millennium indicated that the pipeline would be located north of Hendricks's northern property line, in other words, that the pipeline itself would not cross any part of Hendricks's property.

Millennium apparently concedes that some drawings submitted to FERC did indicate that the pipeline would be located entirely north of Hendricks's property, although the requested easement was shown as crossing a portion of the Property.  According to Millennium, Hendricks later supplied Millennium with a survey of his property, as a result of which the property line was adjusted on later drawings that Millennium filed with FERC, showing that the pipeline itself crossed a portion of the Property.  In other words, the location of the pipeline was not changed, and the pipeline was built in the location indicated in the documents originally filed with FERC, but it turned out that Hendricks's property line was farther north than those earlier documents had indicated.

After considering both sides' submissions, I conclude that Millennium is entitled to summary judgment, for a number of reasons.  First, to the extent that Hendricks seeks to challenge any aspect of the FERC certificate, he may not do so here.  For one thing, he failed to seek administrative review under the NGA, *see* 15 U.S.C. § 717r(a), and judicial review is only available in the Court of Appeals.  15 U.S.C. § 717r(b).  *See Williston Basin Interstate Pipeline Co. V. Dolyniuk Family Trust*, No. A1-03-66, 2005 WL 1398692, at *2 (D.N.D. June 7, 2005) ("District Courts ... are limited to jurisdiction to order condemnation of property in accord with a facially valid certificate. Questions of the propriety or validity of the certificate must first be brought to [FERC] upon an application for rehearing and the Commissioner's action thereafter may be reviewed by a United States Court of Appeals").

As stated, Hendricks contends that Millennium failed to comply with the FERC certificate, because Millennium represented to FERC that the pipeline itself would not cross any part of Hendricks's property.  It appears, however, that Hendricks was well aware, during the FERC proceedings, that the pipeline would cross a portion of his property; it was presumably for that very reason that he provided Millennium with his own property survey, which (correctly, it appears) placed his property line farther north than had been indicated on some of the documents filed by

Millennium.[4]  Any challenges to the project on that ground, then, should have been taken up with FERC in the first instance.

In addition, assuming *arguendo* that the pipeline as built is in violation of the FERC certificate, this Court has no jurisdiction to enforce a FERC certificate.  A district court's role in proceedings involving FERC certificates is circumscribed by statute, and when a landowner contends that the certificate holder is not in compliance with the certificate, "that challenge must be made to FERC, not the court."  *Guardian Pipeline*, 2008 WL 1751358, at *16 n.6; *Portland Natural Gas Transmission Sys. v. 4.83 Acres of Land*, 26 F.Supp.2d 332, 339 (D.N.H. 1998) (stating that "[t]he relevant statute and regulations place the power to police compliance [with a FERC certificate] squarely upon FERC," and that the district "court's jurisdiction extends solely to examining the scope of the certificate and ordering condemnation of property as authorized in the certificate").

Although this Courts' preliminary injunction order also granted Millennium a temporary easement over the Property to allow Millennium to construct and maintain a gas pipeline "on land adjacent to the Property," I do not believe that Hendricks has demonstrated any basis for holding Millennium in contempt, or for granting Hendricks any equitable relief in connection with that order.  It is obvious from the papers filed in support of the preliminary injunction motion that the purpose of the injunction was to enable Millennium to build the pipeline as authorized by the FERC certificate.  Indeed, this Court had no power to grant relief beyond that required to enable Millennium to carry out the pipeline project in accordance with the terms of the FERC certificate.  *See Tennessee Gas Pipeline Co. v. Massachusetts Bay Transp. Auth.,* 2 F.Supp.2d 106, 110 (D.Mass. 1998) ("The District Court's sole charge and authority is to evaluate the scope of the FERC Certificate, and order the condemnation of property in accordance with that scope"); *Rockies Express Pipeline LLC v. 77.620 acres more or less*, No. 08-3127, 2008 WL 3849911, at *1 (C.D.Ill. Aug.

---

[4]At oral argument on the pending motions, Hendricks stated that he mailed a copy of a survey, prepared by a licensed surveyor, to Millennium "repeatedly," apparently to show that Millennium's surveys were inaccurate.  Dkt. #61 at 13.

15, 2008) ("When a FERC Certificate holder seeks condemnation, the district court's jurisdiction is 'limited to evaluating the scope of the FERC Certificate and ordering condemnation as authorized by that certificate'") (quoting *Guardian Pipeline, LLC v. 529.42 Acres of Land*, 210 F.Supp.2d 971, 974 (N.D.Ill. 2002)). Again, to the extent that Hendricks contends that Millennium has violated the terms of the FERC certificate, such a claim is beyond the jurisdiction of this Court.[5]

Hendricks also contends that the Second Circuit's decision dismissing his interlocutory appeal suggests that factual issues remain in this case that preclude the entry of summary judgment. He notes the Court of Appeals' reference to "factual and legal issues that ha[d] not yet been addressed by the district court," which, the court stated, "should be raised before the district court in the first instance ... ." Dkt. #25.

While the Second Circuit did not identify the issues it was referring to, Hendricks's briefs on appeal raised a number of arguments concerning alleged errors by this Court in connection with the issuance of the preliminary injunction. Hendricks asserted, for example, that this Court erred by failing to conduct an evidentiary hearing before issuing the injunction, and by issuing an overbroad injunction.

The Court of Appeals did not, however, state or suggest that there were any genuine issues of material fact that would preclude the entry of summary judgment by the district court. All that the court did was find that it lacked jurisdiction to consider the arguments raised by Hendricks, which, the court stated, should be considered by this Court in the first instance. I do not read the

---

[5]Although there are statements in the case law that a district court's authority is limited to providing for "enforcement" of the FERC certificate, *see, e.g., Transwestern Pipeline*, 550 F.3d at 778 n.9; *Northern Natural Gas Co. v. Approximately 9117.53 acres in Pratt, Kingman, Reno Counties, Kan.*, No. 10-1232, 2011 WL 947091, at *7 (D.Kan. Mar. 15, 2011), it is apparent from those cases that they were referring to courts' ability to "enforce" a FERC certificate by ordering condemnation of the property that is the subject of the certificate, not to any ability to remedy the certificate holder's alleged noncompliance with the terms of the certificate. *See, e.g., Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, No. CIV. A. 08-168, 2008 WL 4346405, at *5 (W.D.Pa. Sept. 19, 2008) (discussing district court's power to "enforce [certificate holder's] right to condemn" property pursuant to FERC certificate); *Northwest Pipeline G.P. v. Francisco*, No. C08-0601, 2008 WL 4547216, at *5 (W.D.Wash. Oct. 3, 2008) (stating that "district courts have a limited scope of review under § 717f(h)," and that they "are limited to jurisdiction to order condemnation of property in accord with a facially valid certificate") (internal quote omitted).

Second Circuit's decision, then, as indicating that any of the issues raised by Hendricks have merit, or that they would not be suitable for adjudication by this Court as a matter of law.

Having reviewed the papers submitted by Hendricks both here and at the Court of Appeals, I find no impediment to the entry of summary judgment for Millennium. To the extent that Hendricks has identified any factual issues, those relate to the measure and extent of his damages, not to Millennium's entitlement to condemnation in accordance with the FERC certificate.

The one issue raised by Hendricks that warrants some comment is his contention that this Court should not have issued a preliminary injunction, and should not grant summary judgment for Millennium, without first finding that Millennium attempted in good faith to agree with Hendricks on a price for the land or property rights sought by Millennium. Federal courts are split as to whether the NGA requires the movant to have negotiated in good faith with a landowner as a prerequisite to relief through eminent domain. *Compare Transwestern Pipeline*, 550 F.3d at 776 (to obtain order of condemnation, plaintiff must show, *inter alia*, "that it engaged in good faith negotiations with the landowner"), *with Maritimes & Northeast Pipeline, L.L.C. v. Decoulos*, 146 Fed.Appx. 495, 498 (1st Cir. 2005) ("Absent any credible authority making good faith negotiation a requirement precedent to the condemnation action, we decline the invitation to create one in this case") (citations omitted), *and Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, No. 08-168, 2008 WL 4346405, at *13 n.3 (W.D.Pa. Sept. 19, 2008) (stating that courts that have imposed a good-faith requirement "gave no explanation why they adopted such a requirement," that in none of the cases imposing such a requirement did the courts refuse to authorize condemnation on the ground that the FERC certificate holder had failed to negotiate in good faith, and concluding that "[t]he plain language of the NGA does not impose an obligation on a holder of a FERC certificate to negotiate in good faith before acquiring land by exercise of eminent domain") (quoting *Kansas Pipeline Company v. A 200 Foot By 250 Foot Piece of Land*, 210 F.Supp.2d 1253, 1257 (D.Kan. 2002)). *See also Guardian Pipeline, L.L.C. v. 295.45 Acres of Land*, No. 08-C-28, 2008 WL 1751358, at *14 (E.D. Wis. April 11, 2008) (collecting cases, and concluding that the NGA does

not obligate the condemnor, as a jurisdictional prerequisite, to negotiate in good faith with the landowner," but adding that coercive, unfair, or fraudulent tactics may render any agreement void or voidable as to the landowner).

Even if the Act does require a showing of good faith, however, I find that such a requirement has been met here.  In fact, this Court expressly found, in granting the preliminary injunction, that there had "been good faith attempts by the company in an effort to resolve and reach an accommodation as to the just compensation." Transcript, Feb. 14, 2008 (Dkt. #39-5) at 38.  I noted that "Mr. Hendricks himself admits that he has never made a demand for a specific amount," and that "even though there has not been agreement, I find that the plaintiff has made good faith efforts to do that over a period of time, increasing its offer severalfold apparently." *Id.*

If anything, the record suggests that Hendricks has never displayed any interest in agreeing on a price for the sought-after easements.  He succinctly summed up his position at oral argument, stating that he had written "a letter to the president of Millennium saying [his] property was posted, they did not have access to [his] property and to keep off." Dkt. #61 at 14.  While the Court does not mean to suggest that Hendricks himself had any obligation to engage in good-faith negotiations, it seems disingenuous for him now to complain that Millennium failed to do so, in light of Hendricks's unyielding opposition to any entry by Millennium onto his property.

I conclude, then, that the only issue remaining for resolution here is that of just compensation. *See Maritimes & Northeast Pipeline*, 146 Fed.Appx. at 498 ("[o]nce a [certificate] is issued by the FERC ... the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking"); *see*, *e.g.*, *Northwest Pipeline Corp. v. Ross*, No. C05-1605, 2008 WL 1744617, at *1 (W.D.Wash. Apr. 11, 2008).  That matter, however, implicates Hendricks's motion for leave to amend his answer.

**IV. Hendricks's Motion for Leave to Amend**

Hendricks has moved for leave to amend his answer to include Columbia Gas Transmission ("Columbia") as a party to this action, and to add a counterclaim against Millennium and Columbia, seeking compensatory and punitive damages and civil contempt penalties.  Dkt. #35 at 6 ¶ 18.  In addition, in his Rule 26 disclosures submitted to the Court, Hendricks has stated that he seeks $1.9 million in compensatory damages, $500,000 in punitive damages, treble damages for Millennium's removal of timber from his property, and monetary penalties for contempt based on Millennium's alleged failure to comply with this Court's February 15, 2008 preliminary injunction order.  *See* Dkt. #34 at 22.

In general, in cases involving takings that "are 'partial takings,' rather than complete takings, 'the measure of just compensation is the difference between the fair and reasonable market value of the land immediately before the taking and the fair and reasonable market value of the portion that remains after the taking. This same test applies when the taking is merely an easement.'"  *Hardy Storage Co., LLC v. An Easement to Construct, Operate and Maintain 12-inch and 20-inch Gas Transmission Pipelines across Properties in Hardy*, No. 2:06CV7, 2009 WL 304736, at *3 (N.D.W.Va. Feb. 6, 2009) (quoting *United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995)).  *See also Columbia Gas Transmission Corp. v. Rodriguez*, 551 F.Supp.2d 460, 462 (W.D.Va. 2008) ("'Market value,' rather than the value to the condemnor or the owner, is the proper measure of just compensation") (quoting *United States v. Petty Motor Co.*, 327 U.S. 372, 377-78 (1946)).

I therefore see no basis to allow Hendricks to amend his answer to seek damages beyond what would constitute "just compensation" under the Act.  In any event, the Court need not determine the precise measure of damages available to Hendricks at this point.  The issue of just compensation remains to be tried before the Court, and the parties will have an opportunity at the appropriate time to present their arguments concerning the correct measure of compensation due to Hendricks.

Hendricks's motion to add Columbia as a party is based on his contention that Columbia owns 47.5% of Millennium (the remaining 52.5% is owned by two other corporations).  *See* Dkt. #35 at 9.  The evidence before me, however, indicates that Millennium holds the FERC certificate, that Millennium is the party seeking condemnation here, and that Millennium is the sole holder of the easement previously granted by this Court.  There is no showing that Columbia has had any involvement in the events leading up to this case, or that Columbia could be held liable for any compensation to which Hendricks is ultimately found to be entitled.  Hendricks's motion is therefore denied.

## CONCLUSION

Plaintiff's motion for summary judgment (Dkt. #39) is granted.  Plaintiff is hereby directed to prepare a proposed order effectuating this Decision and Order, and to submit it to the Court within twenty (20) days of the date of entry of this Decision and Order.  The proposed order must be submitted to defendant Hendricks, for his approval as to form, within ten (10) days after the date of entry of this Decision and Order.  If Hendricks objects to any of the terms of the proposed order, he must inform the Court of his objections no later than twenty (20) days of the date of entry of this Decision and Order.

The parties are hereby directed to work together to attempt to agree on a schedule for discovery or other matters that need to be resolved in advance of a trial on the issue of just compensation.  Within twenty (20) days of the date of entry of this Decision and Order, the parties must inform the Court whether they have agreed on a mutually agreeable schedule, or, if they cannot agree on such a schedule, to submit their respective requests in that regard.

Defendants' motion for leave to amend the answer (Dkt. #35) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      April 12, 2011.